# EXHIBIT B

December 18, 2015

Catherine Farmer, Psy.D.
Manager, Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104

Dear Dr. Farmer:

I am writing in regard to the materials submitted by Bryan Messenger (USMLE 0-943-207-1), who has requested accommodations for the USMLE Step 2 CK exam. In his application, he indicated that he has been diagnosed with a Reading Disorder. However, his most recent evaluation indicated that he has also been diagnosed with a Disorder of Written Expression. In support of his request, Bryan submitted the following materials: 1) a personal statement (undated); 2) unofficial transcripts from Utah Valley University and the University of Utah; 3) a copy of MCAT scores (2007-2010); 4) a psychoeducational evaluation completed on 12/23/11 by Dr. Edward Martinelli; 5) an evaluation completed on 11/2/15 at the Dyslexia Center of Princeton by Dr. Lisa Kestler; 6) a USMLE form which indicates that he has received accommodations in medical school since 2/10/12; and 7) a letter written by Dr. C. V. Rao dated 4/8/14.

Based on my review of the documentation submitted by Bryan, it is my opinion that the available evidence does not support the diagnoses of Reading Disorder or Disorder of Written Expression. The available evidence shows that he is able to learn and achieve at a level commensurate with his same age peers in the general population. The following analysis is offered in support of my opinion.

First, there is no objective documentation that Bryan has a longstanding history of learning difficulties during his school age years or that he has achieved below others of his same age in the

2

general population. In his personal statement, Bryan self-reported that he did not learn to read until second grade. He also self-reported that he "covered up" his reading problems by "helping others complete their homework." However, this self-report is contradictory: If he did not learn to read (or read well), how did he help others with their homework? Bryan self-reported that he was placed in "remedial English classes," but there is no objective documentation to support his assertion. Likewise, he self-reported to Dr. Martinelli that he attended "resource classes" for reading problems in grades 2-10, but there is no objective documentation to verify his self-reports. In any case, placement in remedial English classes and in unspecified "resource classes" is not evidence of a learning (reading) disability. Bryan did not submit his elementary, middle, or high school records nor did he submit ACT or SAT scores. However, his college transcript revealed that he achieved mostly grades of A and B with an occasional C grade, and graduated with a cumulative GPA of 3.2. On the MCAT, which was administered on four occasions, Bryan achieved in the average range on all sections with the exception of Writing. His MCAT Total Score was in the average range each time (43rd-55th percentile). Bryan also passed the USMLE Step 1 and the USMLE Step 2 CS exams. He self-reported that he "scored well" on the latter exam. Bryan self-reported that it takes him more time to complete SHELF exams in medical school, but did not indicate that he failed (or even had difficulty with) these exams. *All* of the aforementioned accomplishments were attained without the benefit of accommodations. The objective documentation belies the notion that Bryan exhibited substantial difficulties with reading and writing prior to the diagnosis of disability or that his reading and writing skills are substantially below those of his same age peers in the general population.

Second, the available documentation contains no objective evidence that Bryan was diagnosed as having a learning (reading and writing) disability during his elementary and middle school education, or during his secondary and undergraduate education. Instead, the available evidence suggests that he

3

achieved at a level similar to his same age peers in the general population prior to the diagnosis of disability. A disability for learning is typically identified in elementary school, i.e., it is a developmental disability that emerges during childhood. Even if a student is not formally diagnosed, he should present objective evidence showing that he had severe problems early in school and then throughout his school career. Although Bryan self-reported that he reads more slowly than others, there is *no* objective evidence in the documentation which shows that he has exhibited impairments in reading and writing when compared to his same age peers in the general population prior to being diagnosed with a disability when he was 30 years old.

Third, in his 2011 evaluation completed when Bryan was 30 years old, Dr. Martinelli based his diagnosis of disability, at least in part, on aptitude-achievement discrepancies. However, it has been well-known for many years that the diagnosis of learning (reading) disability based on aptitude-achievement discrepancy is invalid. He also erred in reporting graded-based norms (16.0, 4-year university) for the WJ-III and using these norms, at least in part, for the diagnosis of disability. Dr. Martinelli mentioned that the diagnosis of learning disability can be made through the use of the "average person model" but he showed that misunderstood the model by writing, "….average person model where average or higher cognitive abilities are compared to achievement scores which must fall below the average person…" Here, he uses the aptitude-achievement discrepancy model. But, the average person model should be used with no reference to cognitive abilities or aptitude. Dr. Martinelli should have used the WJ-III scores calculated with age-based norms that he included in his report. These scores showed that Bryan achieved in the average range when compared to his same age peers on the Broad Reading ($SS = 94$) and Basic Reading ($SS = 91$) Clusters and all WJ-III reading subtests, i.e., Letter-Word Identification ($SS = 93$), Reading Fluency ($SS = 86$), Passage Comprehension ($SS = 105$), Word Attack ($SS = 87$), Phoneme/Grapheme Knowledge ($SS = 91$). While Bryan's reading skills

4

on the WJ-III were not strong, his scores are, as Dr. Martinelli indicated, in the average to low average, not below average, range when compared to his same age peers in the general population.

Fourth, there are multiple problems with the evaluation completed in 2015 by Dr. Kestler. The problems included in the report include the following issues:

- In her report, Dr. Kestler based the diagnosis of disability, at least in part, on comparisons to college graduates and individuals who have completed medical school, i.e., "Given Bryan's real world academic achievement as a college graduate who has successfully completed all coursework in medical school, these test results demonstrate a disconnect between what Bryan can show on tests and what he can demonstrate through more meaningful ways" (p. 16). But, she ignored his past history of strong undergraduate work without accommodations, average performance on the MCAT without accommodations, and successful performance on Step 1 and Step 2 CS without accommodations. Surely, his accomplishments on the timed, standardized formats of the MCAT and Steps 1 and 2CS demonstrate "meaningful performance."
- Dr. Kestler based the diagnosis of reading disability on a number of qualitative judgments. For example, she used the terms "dyseidetic" and "dysphonetic" to describe dyslexia. Although she defined the terms (p. 2), she did not explain the criteria by which one can be classified with these "types" of dyslexia. (For the record, I have not heard these terms used to describe dyslexia in over 20 years.)
- Dr. Kestler also diagnosed Bryan with "moderate to severe" dyseidetic and "mild to moderate" dysphonetic dyslexia. However, the terms mild, moderate, and severe were left unexplained and were not accompanied by specific criteria.

5

- Dr. Kestler administered two standardized testing measures, the CTOPP and the GORT-5, that are not normed for individuals who are 33 years old, and then used these tests to make a diagnosis of disability. She compounded her error by reporting *only* grade equivalent scores for these measures. These tests cannot be used for diagnostic purposes.
- Dr. Kestler based her diagnosis of Reading Disorder, at least in part, on aptitude-aptitude discrepancies. In her report, she identified a "meaningful discrepancy" between Bryan's WAIS-IV Perceptual Reasoning Index score (97th percentile) and his score on the VMI (58th percentile). She also indicated that Bryan has relatively weak skills in visual perception and based this judgment on his "relatively lower score on the WAIS-IV Processing Speed Index (PSI = 100, 50th percentile)…" (p. 9). However, Bryan's score on both the Processing Speed Index and the VMI were solidly in the average range. In addition, it has been well-known for many years that aptitude-aptitude discrepancies are both normal and expected.
- Dr. Kestler based her diagnosis of Reading Disorder, at least in part, on "…visual perceptual difficulties contributing to dyslexia…" (p. 17) and recommended "magnification, highlighting, answer masking and/or a line reader" as well as "test items presented [are] aurally…" (p. 17). However, converging evidence in reading research over the last 30 years has shown that visual "impairments" of this type neither explain nor account for the severity of reading problems. Researchers have found no evidence to link "visual perceptual" difficulties to difficulties in learning to read or to ongoing reading problems.

Given the aforementioned problems with the report, the only objective evidence related to reading in Dr. Kestler's report is the WIAT-III scores. Although Bryan's scores are not strong, he achieved in the low average range on the Total Reading ($SS = 87$) and Basic Reading ($SS = 90$) Composites and in the average range on the Word Reading ($SS = 94$), Pseudoword Decoding ($SS = 89$), and Reading Comprehension ($SS = 102$) subtests. On the WIAT-III, Bryan achieved in the below average range on

one subtest. However, a diagnosis of disability cannot be made by selecting one low subtest score, especially when scores on other measures of the same skill (reading) are in the average range.

Fifth, Dr. Kestler based her diagnosis of Disorder of Written Expression on "…poor spelling, sentence composition, and grammar and mechanics in composing essays…" (p. 16). However, Bryan's scores on *all* standardized written language measures were in the average to above average range on the WIAT-III Written Expression Composite ($SS = 103$) and all writing subtests, i.e., Sentence Composition ($SS = 95$), Essay Composition ($SS = 124$), Spelling ($SS = 89$), Essay Composition: Grammar and Mechanics ($SS = 96$).

Sixth, when making their disability diagnoses, both Dr. Martinelli and Dr. Kestler ignored Bryan's long history of success on timed, standardized exams and his average, or better, performance in several academic settings. Specifically, they failed to acknowledge that Bryan was successful in the following settings and on timed, standardized exams *without* accommodations when he was compared to his same age peers and to *select* populations:

- Elementary school
- Middle school
- Secondary school
- Undergraduate education
- MCAT exam
- USMLE Step 1 exam
- USMLE Step 2 CS exam

As I stated earlier in my review, the aforementioned accomplishments belie the notion that Bryan has exhibited substantial difficulties with reading (or writing) prior to the diagnosis of disability or that his

reading and writing skills are substantially below his same age peers in the general population. Likewise, the test results in reading and writing reported by Dr. Martinelli and Dr. Kestler are inconsistent with the reading and writing skills of an individual who has done well in school at all levels of education and on timed, standardized exams.

Seventh, the available documentation does not provide objective evidence that Bryan meets the criteria for Reading Disorder or Disorder of Written Expression because he does not meet the DSM-5 criteria for this disorder. There is no objective evidence that he has exhibited difficulties learning and using academic skills for *any* length of time (Criterion A). Likewise, there is no objective evidence that his academic skills are substantially and quantifiably below those expected for his chronological age, that poor academic skills cause significant interference with academic performance or activities of daily living, or that he has a documented history of impairing learning difficulties (Criterion B). In addition, there is no objective evidence that he exhibited learning problems in his school-age years, or undergraduate education (Criterion C). Instead, the findings demonstrate that his reading and written language skills are largely commensurate with, or above, his same age peers in the general population.

Overall, the objective evidence shows that Bryan has the ability to achieve at an average level academically when he is compared to a representative sample of his same age peers in the general population. The objective documentation shows that he does not exhibit impairments in reading or writing. Bryan displays a long history of success on timed, standard exams and average, or better, performance in multiple academic settings. Thus it is my conclusion that the request for accommodations should be denied.

                                                       Sincerely,

                                                       Richard L. Sparks, Ed.D.