# EXHIBIT E

November 29, 2016

Catherine Farmer, Psy.D.
Manager, Disability Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104

Dear Dr. Farmer:

    I am writing in regard to the materials submitted by Bryan Messenger (USMLE #0-943-207-1), who has requested accommodations for the USMLE Step 2 CK exam. In his application he indicated that he was diagnosed with a Reading Disorder in 2011 (30 years of age). I have previously reviewed Bryan's file and submitted a review to NBME on 12/18/15. For that review, he had also been diagnosed with (but did not claim) Disorder of Written Expression. Based on my review of the documentation submitted by Bryan at that time, it was my opinion that the available evidence did not demonstrate that he met the DSM-IV criteria for either Reading Disorder or Disorder of Written Expression. For that review, Bryan submitted the following materials: 1) a personal statement (undated); 2) unofficial transcripts from Utah Valley University and the University of Utah; 3) a copy of MCAT scores (2007-2010); 4) a psychoeducational evaluation completed on 12/23/11 by Dr. Edward Martinelli; 5) an evaluation completed on 11/2/15 at the Dyslexia Center of Princeton by Dr. Lisa Kestler; 6) a USMLE form which indicates that he has received accommodations in medical school since 2/10/12; and 7) a letter written by Dr. C. V. Rao dated 4/8/14.

    For the current review, Bryan submitted these additional materials: 1) another personal statement (undated); 2) a copy of his high school transcript; 3) a copy of his ACT scores (4/99 and 12/99); 4) a parental prior notice from the Provo School District dated 9/21/89; 5) copies and partial copies of IEPs

from the Provo School District dated from 9/89 through 1997 (grades 2-10); 6) copies of transition planning forms from 1996 and 1998; 7) a copy of prior notice from the Provo School District dated 9/99 (grade 12); 8) copies of Student Profiles from the Provo School District from 1991-93 (grades 3-5); and 9) a copy of Stanford Achievement Test scores from 10/92.

Based on my review of the additional documentation, it is my opinion that the evidence does not support the diagnosis of Reading Disorder. Although Bryan may have exhibited early difficulties with reading and was provided with special education assistance in elementary and middle school (and perhaps, high school), the objective evidence shows that he has been able to learn and achieve at a level commensurate with, or above, his same age peers in the general population. As a result, the documentation does not show a substantial impairment to a major life activity. The following analysis is offered in support of my opinion.

The documentation shows that Bryan may have exhibited early difficulties with reading in elementary school and that he was provided with IEPs from 2nd-9th (and maybe 10th) grades. However, he did not submit any report cards or testing records from elementary and middle school, and did not submit any testing records from secondary school. Thus, his reading skill levels during this period of time are unknown. The available documentation did include Stanford Achievement Test scores from either 5th or 6th grade, which indicated that Bryan achieved in the below average range on the Total Reading Composite (7th percentile). But, the available documentation also showed that he achieved from average to above average in reading skills in 3rd-5th grades on school testing. The IEPs from 1996 and 1998 included some grade equivalent scores in reading on an unspecified test (WCJ or WCT), but grade equivalent scores cannot be used for diagnostic or comparison purposes. The available documentation was unclear about the extent to which Bryan was provided with special education

3

assistance or accommodations in high school, but by the 11th or 12th grades, the records indicated that he did not meet criteria to receive special education services. After he graduated from high school, Bryan was not provided with accommodations until he entered medical school. His scores on the ACT varied, but he scored in the average range on the English (37th percentile) and Reading sections (24th percentile) when compared to a select population the second time he took this test without accommodations. All of the aforementioned information was gleaned from the additional documentation. In my previous review, I found that Bryan earned an Associate degree and attained a 3.20 GPA while earning his Bachelor's degree. He achieved in the average range on the Verbal (27th-67th percentile) and Total Test (43rd-55th percentile) sections of the MCAT when compared to a highly selective group of medical school applicants. He was employed as a teacher at a trade school and was apparently successful in this position. Bryan passed the USMLE Step 1 and Step 2 CS exams. These accomplishments, i.e., Associate's and Bachelor's degrees, average MCAT scores, successful employment, passing scores on the USMLE Step 1 and Step 2CS exams, were attained without the benefit of accommodations. Although Bryan may have had early difficulties with reading, his skills obviously had improved to the extent that he could achieve at a level with, or above, his same age peers in the general population in his undergraduate education and, at minimum, in the average range on timed, standardized tests when compared to *select* populations.

Given the additional documentation provided by Bryan, the evidence suggests that he may have a history of reading difficulties during his school age years and that he may have been achieving below others of his same age in the general population at that time. But, he did very well in his high school courses and the documentation is unclear as to whether, or to what extent, he used accommodations in his secondary education classes. He was diagnosed with a disability and was provided with IEPs through part of his elementary and middle school education. However, he achieved in the average

range on the ACT English and Reading sections and attained a 3.20 GPA in college without accommodations while being compared to select populations. Likewise, he achieved in the average range on the MCAT when compared to a highly selective group of medical school applicants and passed both the USMLE Step 1 and Step 2 CS exams without accommodations. He was successfully employed as a teacher, but was not provided with accommodations in this position. When his successful academic and testing histories are paired with the fact that he achieved in the average range on timed, standardized measures of reading (and writing) in the 2011 and 2015 evaluations when compared to his same age peers in the general population, the objective evidence demonstrates that his reading skills are, at minimum, commensurate with his same age peers in the general population. In addition, he used his reading skills to achieve at levels consistent with, or above, his same age peers in the general population in his undergraduate education. Moreover, his reading skills were strong enough to achieve in the average range when compared to a highly selective population on the MCAT and to pass the Step 1 and Step 2 CS exams.

Given the totality of the objective evidence that includes the additional documentation, it is my opinion that Bryan is able to learn and achieve at a level commensurate with, or above, his same age peers in the general population. The prior provision of accommodations is not sufficient to indicate that accommodations will be provided in the future. In Bryan's case, the objective evidence does not show that he is substantially limited in a major life activity compared to most people. Instead, the evidence shows that he had done better academically than most people in the general population, and at least as well as highly selective peers in competitive settings. Thus, it is my conclusion that the request for accommodations should be denied.

Sincerely,

Richard L. Sparks, Ed.D.